Captain John H. FRAZIER, Jr.,
Plaintiff-Appellee,

v.

Howard H. CALLAWAY, Secretary of the
Army, Defendant-Appellant.

No. 73-2880.

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1974.

Donald E. Walter, U. S. Atty., Leven H. Harris, Asst. U. S. Atty., Shreveport, La., Royce C. Lamberth, Captain, JAGC Office of the Judge Advocate Gen., William Eckhardt, Major, JAGC, Dept. of the Army, Walter H. Fleischer, Barbara L. Herwig, Dept. of Justice, Washington, D. C., for defendant-appellant.

James J. Cox, Lake Charles, La., for plaintiff-appellee.

Before WISDOM, AINSWORTH and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

The single issue this appeal presents is whether John Frazier, an Army Reserve officer who had been an enlisted man, was entitled under 10 U.S.C. §

3258 [1] to reenlist at his previous enlisted rank at the termination of his active duty as a Reserve officer despite the fact that he did not have regular enlisted service immediately before receiving his commission. The district court held that Frazier was entitled to reenlistment under Section 3258 and issued an order of mandamus under 28 U.S.C. § 1361 [2] directing the Secretary of the Army to permit Frazier to reenlist at his former grade. We reverse.

## I.

John Frazier enlisted in the Regular Army on June 27, 1950, for a term of three years and was discharged on July 1, 1953. For the next four years he attended Southern University at Baton Rouge where he participated in the Reserve Officers Training Corps and received a reserve commission with his academic degree in June 1957. He entered on active duty in September 1957 as a Second Lieutenant and served on active duty through June 1972 when he was released as a Captain. When Captain Frazier was advised in December 1971 that he would be released from active duty, he attempted to reenlist at his former grade in the Regular Army. The Army Grade Determination Board ruled that Captain Frazier had no statutory right to reenlist under 10 U.S.C. § 3258. The Army denied him the right to reenlist and released him from active duty on June 30, 1972. Frazier had seventeen years and six months of service. If he could have served six months more, thereby attaining eighteen years of service, he would have been entitled to serve two more years. Two more years would have given him a twenty-year retirement.

Captain Frazier brought an action in mandamus under 28 U.S.C. § 1361 to order the Secretary of the Army to permit his reenlistment. The district court held that the Regulations promulgated by the Army were not "a reasonable implementation of the statute" and that the "plain language" of 10 U.S.C. § 3258 requires Frazier's reenlistment.

## II.

This case turns on the construction of 10 U.S.C. § 3258. We find no cases which have construed this section. The relevant language of Section 3258 provides that "[a]ny former enlisted member of the Regular Army who has served on active duty as a Reserve officer . . . is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer." The question of statutory construction raised on this appeal is whether Captain Frazier is a "former enlisted man" within the meaning of the statute because of his having served at one time, but not immediately before becoming an officer, as an enlisted man.

The Secretary of the Army contends that Section 3258 applies not to *any* enlisted man who has become an officer

---

1. 10 U.S.C. § 3258 provides that:

    Any former enlisted member of the Regular Army who has served on active duty as a Reserve officer of the Army, or who was discharged as an enlisted member to accept a temporary appointment as an officer of the Army, is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in line of duty, if (1) his service as an officer is terminated by an honorable discharge or he is relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge, and (2) he applies for reenlistment within six months (or such other period as the Secretary of the Army prescribes for exceptional circumstances) after termination of that service. However, if his service as an officer terminated by a general discharge, he may, under regulations to be prescribed by the Secretary of the Army, be so reenlisted.

2. 28 U.S.C. § 1361 provides that:

    The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

but only to those officers who were enlisted men *immediately before* their entry onto active duty as commissioned officers in the Army Reserve. Captain Frazier argues that there is no immediacy requirement under Section 3258 and that "any former enlisted man" includes any officer who has been, at any time in the past, an enlisted man in the Regular Army.

The district court adopted Captain Frazier's construction of the statute because that construction followed from what the court called the "unambiguous language" of the statute. Feeling "no compulsion to explore the legislative history for interpretative assistance", the district court held that all "former enlisted men . . . who become reserve officers and serve on active duty and who are then relieved from active status for no improprietous reasons are entitled to be reenlisted in their former enlisted status upon timely application". The court found no immediacy requirement, either express or implicit, in the clear and unambiguous language of the statute. There is a possible ambiguity, however. The statute refers to entitlement "to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer. . . ." A man who has progressed anywhere in the grades will have held more than *one* enlisted grade. Presumably if one had served as a buck private before going on active service as an officer, there would be no point in saving that status on re-enlistment, since one could be a buck private immediately upon re-enlistment. The use of the singular article seems therefore to contemplate a particular enlisted grade, say, to E–4 as Captain Frazier had. The article "the", therefore, would seem to refer to the one grade held immediately before going on active service.

We conclude that the statutory history of Section 3258 supports the Army's construction of the statute and that the district court erred in failing to consider the statutory history.

The earliest predecessor of Section 3258 was enacted in March 1918 for the purpose of encouraging noncommissioned officers in the Regular Army to accept temporary commissions as Reserve officers during World War I. Although the Army believed that some career soldiers would be of greater value to the war effort as temporary officers than as enlisted men, these men were reluctant to accept such commissions because they had no guarantee that they could return to their previous enlisted rank at the end of the hostilities. The Senate Report on this legislation set forth the problem Congress sought to remedy:

> The War Department has found in practice that certain excellent noncommissioned officers of many years of service have declined temporary promotion because of the fear that they might jeopardize, by the acceptance of such commission, that status with respect to service as enlisted men of the Army. It has taken some of these noncommissioned officers many years of service to attain the positions they now hold, and they naturally do not care to give up such positions for temporary commissions and then start at the bottom and try to regain their former status. 65th Cong., 2d Sess., Senate Report No. 320, p. 1.

The purpose of the Act of March 30, 1918, was not to provide preferential treatment for any officer who was at some time in his career an enlisted man, but to satisfy the Army's need for officers with military experience by providing an incentive for enlisted men then in the service to accept temporary reserve commissions.

The Act of March 30, 1918, provided that "any enlisted man of the Army of the United States who has heretofore been, or shall hereafter be, discharged to accept a commission in . . . the Army of the United States . . . shall . . . be accepted and be restored to the grade held by him before being discharged to accept such commis-

sion." Act of March 30, 1918, 40 Stat. 501. The provisions of this Act were limited in their scope and provided a right to reenlist only to an enlisted man who was discharged to accept a temporary commission. No provision was made for the protection of enlisted men who were also reserve officers and who were discharged from their status as enlisted men upon being called to active duty pursuant to their reserve commissions. Because the 1918 Act applied only to enlisted men in the Regular Army who were discharged *for the purpose* of accepting reserve commissions, an immediacy requirement was implicit in the 1918 Act.

In 1939 Congress repealed the 1918 Act and replaced it with a statute of broader scope. The 1939 Act extended the protection of the earlier statute to warrant officers as well as to enlisted men and to enlisted men and warrant officers called to duty under their existing Reserve commissions as well as those discharged to accept new commissions in the Army of the United States. The Secretary of War supplied the Congress with draft legislation intended to cure the disparity in treatment accorded men discharged in an emergency to accept a new commission and those men who qualified for Reserve commissions in peacetime and subsequently called to active duty during the emergency. In a letter that accompanied the legislation, the Secretary explained the nature of the problem:

Under the provisions of the Act of March 30, 1918, enlisted men discharged to accept a commission during an emergency can, upon termination of that commission, be reenlisted . . . and restored to the grade held at the time of discharge. No such provision exists for those men who in peacetime have qualified for Reserve Commission and who subsequently may be called to active duty. The Comptroller General has ruled that the status of these men as enlisted men or warrant officers must terminate whenever they are called to active duty under their commissions . . . Most of the enlisted men able to qualify for Reserve commissions are those of long service and high grade. Acceptance of active duty as an officer might operate to deprive them of benefits and rights which had accrued to them previously as enlisted men. 76th Cong., 1st Sess., Senate Report No. 397, p. 2.

The suggested legislation was enacted on July 14, 1939 and provided that "any warrant officer or enlisted man of the Regular Army who shall serve on active duty as a Reserve officer . . . or who shall be discharged to accept a commission . . . and whose active service as a commissioned officer shall terminate honorably, shall be entitled . . . to reappointment as warrant officer or to reenlistment in the grade held prior to such commissioned service, without loss of service or seniority". Act of July 14, 1939, 53 Stat. 1001.

The Act of July 14, 1939, thus broadened the class of persons protected under the statute to include enlisted men already holding Reserve commissions as well as enlisted men discharged in order to accept such commissions. The purpose of the Act remained the same: to facilitate the movement of experienced enlisted men into the reserve officers corps when the national interest would be better served by their presence there. Neither the 1918 legislation nor the 1939 legislation was intended to bestow benefits on any officer who merely happened to have been an enlisted man at some point in his career. An immediacy requirement must be inferred from the very purpose of the legislation.

In 1954 Congress amended the Act of July 14, 1939, to limit the statutory right of reenlistment in former grade to enlisted men alone because of a change in the law which authorized warrant officers to hold a temporary higher grade without termination of their warrant officer status. This change in the law meant that warrant officers no longer needed this statutory right to reappointment in their former grade.

The difficulty in statutory construction in the present case stems from the codification and enactment into law of Title 10 of the United States Code in 1956. The 1939 Act, as amended, was codified and enacted into law as 10 U.S.C. § 3258, with some alteration in the statutory language. Section 3258 states in relevant part:

Any *former* enlisted man of the Regular Army who has served on active duty as a reserve officer . . . or who was discharged as an enlisted member to accept a temporary appointment in the Regular Army in the enlisted grade he held before his service as an officer. (emphasis added).

The "Historical and Revision Notes" to Section 3258 state that the word "former" was inserted by the codifiers for the sake of clarity. The House Committee and Senate Committee Reports on the codification of Title 10 point out that the codifiers intended only to restate existing law and did not intend to make new law. See 1956 U.S.Code, Cong. & Admin.News, pp. 4620–4651. Nonetheless, Captain Frazier argues that the word "former" should be accorded substantial weight and taken at face value to include any officer who was an enlisted man at any time prior to his service as an officer. In light of the purposes of Section 3258, as set forth in the legislative history, we find this construction implausible.

Without the insertion of the word "former", Section 3258 would have read "[a]ny enlisted man of the Regular Army who has served on active duty as a reserve officer . . .". The codifiers apparently rejected this language because of its implication that a serviceman could serve contemporaneously as an enlisted man and as a reserve officer on active duty. Unfortunately, the codifiers chose to clarify this apparent contradiction by inserting the word "former" and thus created a more significant uncertainty concerning the continued vitality of the immediacy requirement.

As noted earlier, in construing the language of Section 3258, the district court did not consider the weight to be given the words of the section which entitle the former enlisted man to reenlistment in *"the enlisted grade"* held before his service as an officer. Because an enlisted man qualifying under Section 3258 would have held several grades during his periods of enlistment before becoming an officer, the statutory language *"the* enlisted grade" appears to contemplate a grade held at a particular point in time. Although this phrase would not by itself prove the existence of an immediacy requirement under the statute, it is significant both for its compatability with the immediacy requirement shown in the legislative history and for its incompatibility with the construction advanced by the court below.

■ We find that the proper construction of Section 3258 implies an immediacy requirement and that an Army Reserve officer attempting to reenlist at the termination of his active duty as a commissioned officer must have been commissioned immediately after the termination of his prior service as an enlisted man in order to qualify for reenlistment at prior grade under 10 U.S.C. § 3258.

### III.

The Secretary of the Army urges that we adopt his construction of Section 3258 because of the deference generally paid an administrative agency's interpretation of the statutes that the agency is charged to administer. Red Lion Broadcasting Co. v. F. C. C., 1967, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371. To uphold an agency's interpretation of its statutes, a court "need not find that . . . [the agency's] construction is the only reasonable one, or even that it is the result that . . . [the court] would have reached". Udall v. Tallman, 1965, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616. Although the construction we adopt is in effect that urged by the Secretary, we are compelled to state that we do so because of our understanding of the legislative history of Section 3258. This case is peculiarly inappro-

priate for application of the standard set down in *Red Lion Broadcasting.*

■ The policy underlying the deference courts pay to an agency's interpretation of the statutes the agency is charged to administer is strongest when the agency's interpretation is contemporaneous with the adoption of the statute it interprets and is long-continued in its application. See Griswold, A Summary of The Regulations Problem, 54 Harv.L. Rev. 398, 404 (1941).

The Army has attempted to establish the longevity of its immediacy interpretation [3] of Section 3258 by producing the Army regulations in effect in 1949. These regulations clearly state an immediacy requirement. The relevant paragraph states that "[a]ny enlisted man of the Regular Army . . . who serves on active duty as a Reserve officer or who is discharged to accept a temporary commission in the Army . . . is entitled to reenlist in the Regular Army . . . in the permanent enlisted grade held immediately preceding such commissioned service." Army Regulations SR 615–105–1, § 14(b)(1), dated 15 April 1949.

The Army has also provided us with its 1973 Regulations which also impose an immediacy requirement. The relevant paragraph in the 1973 regulations states that "[a] statutory entitlement to reenlist under 10 U.S.C. 3258 exists only to Regular Army enlisted personnel who hold Reserve Commissions and are called to active duty under that commission, and tho those Regular Army enlisted personnel who were discharged to accept AUS commissions in time of emergency." Army Regulations C7, AR 601–280, § 1–4(b)(1).

Although both the 1949 regulations and the 1973 regulations indicate some type of immediacy requirement under Section 3258, a discordant note is struck by the wording of the 1971 regulations which do not state any sort of immediacy requirement and in fact track in relevant part the language .of the statute which the Secretary himself has characterized as ambiguous. The relevant section provides:

Secretarial Authority. a. The establishment of qualifications for reenlistment in the Regular Army is the prerogative of the Secretary of the Army. The Secretary of the Army may deny reenlistment to any individual who otherwise meets the criteria specified in this regulation, except as set forth in b below.

b. Any former member of the Regular Army who has served on active duty as a Reserve commissioned officer of the Army, or who was discharged as an enlisted man to accept a temporary appointment as a commissioned or warrant officer of the Army is entitled to be reenlisted in the Regular Army provided his commission or warrant officer service was terminated by an honorable discharge or by relief from active duty for a purpose other than that to await appellate review of a sentence including dismissal or dishonorable discharge, and provided application for reenlistment is made within 6 months following such termination. (10 U.S.C. 3258). Army Regulation C5, AR 601–280, § 1–4, dated 29 June 1971.

The record does not contain the Army regulations in effect between 1949 and 1971.[4] The 1971 regulations, however,

---

3. The obfuscatory character of the Army's regulations, as well as the difficulty one has in obtaining them, is demonstrated in the record by a letter of 21 April 1972 from Lieutenant-Colonel Mayers of the Judge-Advocate General Corps to the Commanding General of the Fifth Army in reference to Captain Frazier's claim. Colonel Mayers' letter describes a "conflict of interpretation of possible long standing" with regard to 10

U.S.C. § 3258. Moreover, Colonel Mayers concluded that Captain Frazier's interpretation was correct after "researching appropriate regulations and through inquiries at each level of command through to Department of the Army".

4. The Secretary of the Army has provided us with Army Regulation C 16, AR 601–210, § 2–3, dated 2 October 1972. This regulation

offer no more guidance to an enlisted man relying on them than does the bare language of the statute itself, which the Secretary now argues is ambiguous on its face.

The Secretary informs us that for some time officers in Captain Frazier's position were routinely allowed to re-enlist regardless of the individual's failure to qualify for the statutory right to reenlist under Section 3258. Apparently this reenlistment was effected under the Secretary's discretionary power to determine the grade at which Army personnel are enlisted. See 10 U.S.C. § 3256. Presumably it was because of this policy of permissive reenlistment that the 1971 regulations made no distinction between former enlisted men who had become officers immediately after termination of their enlisted service and those who had simply been enlisted men at some time in the past. During the period the Secretary of the Army chose to exercise his discretion in this manner it made no difference that one class was entitled to reenlist by statute and the other class could reenlist only because the Secretary chose to exercise his discretion in their favor. Indeed, the problem this litigation raises could occur only when the Secretary of the Army decided to change his policy. When the manpower needs of the Army changed as a result of the planning for an all-volunteer Army, the Secretary made a determination within his discretion that former officers should not be allowed to fill up the higher noncommissioned ranks and thus stifle the opportunities for advancement offered new enlisted men. When the Secretary determined that he would allow reenlistment only for those who were statutorily entitled to it, the Army Regulations suddenly did not mean what they said on their face.

states basic eligibility criteria for persons with prior Army service and specifically defines a "former enlisted member of the Regular Army" as one "separated for the purpose of entering into active commissioned or warrant officer service". We are urged to

 The Army's policy and regulations show a lack of concern for servicemen in Captain Frazier's position who might make important career choices on the basis of a right to reenlist apparent on the face of the regulations but in fact illusory. For the purpose of carrying out the congressional objectives, as evidenced in the legislative history of 10 U.S.C. § 3258, the judgment of the district court must be

Reversed.

read this regulation in tandem with C 5, AR 601–280, § 1–4. This reading would ignore the fact that 601–280 is dated 1971 while 601–210 is dated 1972. We are still without guidance as what interpretation the Army gave to Section 3258 before 1972.