Thomas A. ZAVISLAK,

v.

The UNITED STATES.

No. 92–700C.

United States Court of Federal Claims.

Sept. 27, 1993.

Guy J. Ferrante, Falls Church, VA, for plaintiff.

Lisa B. Donis, Washington, DC, with whom was Asst. Atty. Gen., Frank M. Hunger, for defendant. Conrad M. Von Wald, U.S. Air Force, of counsel.

## OPINION

YOCK, Judge.

This military pay case comes before the Court on the defendant's Motion to Dismiss, filed on January 21, 1993, and the plaintiff's Cross–Motion for Summary Judgment, filed February 22, 1993. The threshold issue before the Court is whether or not Mr. Thomas Zavislak, a United States Air Force Reserve officer, who at one time had been an enlisted man, was entitled to reenlist at his previous enlisted grade upon his involuntary separation from active duty as a Reserve officer, despite the uncontested fact that the plaintiff did not obtain his commission as an officer immediately after his enlistment ended. This Court holds that he was not entitled to reenlist at his previous enlisted grade.

### Factual Background

Plaintiff, Mr. Zavislak, enlisted in the United States Air Force on February 10, 1966, and served on active duty in that status for almost four years. During the time that he was enlisted, the plaintiff advanced to the grade of sergeant (E–4), and on December 10, 1969, he was honorably discharged from active duty. After his discharge, the plaintiff attended Ohio State University, where he joined the Reserve Officer Training Corps ("ROTC"). Upon graduation from the University, the plaintiff was commissioned a second lieutenant in the United States Air Force Reserve, and he entered extended active duty in that capacity on April 14, 1976.

Plaintiff rose to the grade of captain in the Air Force Reserve, however, he was not selected for advancement to the grade

of major on two separate occasions. It is not in dispute that under the law, officers who have been passed over twice for advancement must either retire, if eligible, or be involuntarily discharged from active duty. Because the plaintiff was not eligible for retirement in 1987, he considered reenlisting as a sergeant (E–4)—the highest grade he had attained prior to his discharge as an enlisted man in 1969. According to Mr. Zavislak, once his separation appeared inevitable, he contacted his Consolidated Base Personnel Office (CBPO) attempting to reenlist. The plaintiff was rejected because Air Force personnel read 10 U.S.C. § 8258 and Air Force policy to require that the applicant's term as an active-duty officer *immediately* follow his term as an enlisted man before he would have a statutory right to reenlist.[1] The plaintiff did not meet this criteria because he had an interruption of almost seven years between his active duty enlisted service and his active duty service as a Reserve officer. When the plaintiff was rejected by the CBPO, plaintiff raised the issue of his reenlistment with his chain of command and with the Air Force Manpower and Personnel Center (AFMPC). When his efforts to reenlist failed, the plaintiff contacted his congressman, Representative William S. Broomfield of Michigan, who inquired into the plaintiff's situation. Again, Air Force representatives informed the plaintiff and Representative Broomfield that 10 U.S.C. § 8258 and Air Force policy only entitle an active duty officer to reenlistment when there is no break between discharge from active duty enlisted service and service as an active-duty officer. Although the Air Force conceded that its policy had recently changed due to budgetary constraints, Air Force representatives advised plaintiff that the new policy was in accord with the Air

Force's reading of the statutory entitlement to reenlist set forth in 10 U.S.C. § 8258.[2]

On June 20, 1990, the plaintiff applied to the Air Force Board for Correction of Military Records (AFBCMR) for relief pursuant to 10 U.S.C. § 1552 (1982). In his application for review, the plaintiff argued that the Air Force's new policy, which allowed reenlistment only to those with no interruption between enlisted and officer service, was contrary to the statute creating the entitlement (10 U.S.C. § 8258). Alternatively, plaintiff argued that it was "fundamentally unfair and unjust for the Air Force to change a well known and long-standing practice, upon which he had specifically relied in planning his future and that of his family, without notifying individuals likely to be affected by it." Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss, at 5 (Feb. 22, 1993). The AFBCMR denied the plaintiff relief on both grounds, and the plaintiff brought this action seeking backpay and correction of his military record to reflect his reenlistment and previously achieved grade of sergeant (E–4). As grounds for the relief sought, the plaintiff alleges that the AFBCMR decision was arbitrary, capricious, and contrary to the law contained in 10 U.S.C. § 8258. The defendant argues that plaintiff was not entitled to reenlist under 10 U.S.C. § 8258 because he did not receive his commission immediately after being discharged as an enlisted man in 1969. The defendant further argues that the AFBCMR decision was soundly based on the facts before the Board and in full accordance with the law.

### Discussion

Summary judgment is an integral part of the federal rules; it is designed "to

---

1. Although the parties dispute whether plaintiff technically "applied" for reenlistment within 6 months of his involuntary separation in accordance with the requirements set forth in 10 U.S.C. § 8258 (1982), resolution of this issue is not necessary for the Court's determination in this matter.

2. The plaintiff does not contest that the Air Force policies promulgated pursuant to 10 U.S.C. §§ 504, 506, 508 and 510 may offer *great-

er* reenlistment entitlement than the base-line statutory entitlement set forth in 10 U.S.C. § 8258. Plaintiff's primary contention in this case is that when the Air Force changed its reenlistment policy, the Air Force's reenlistment policy fell *below* the base-line statutory reenlistment entitlement, which plaintiff reads as an entitlement for a commissioned officer to reenlist, if at some point in his life, he has served as an enlisted man.

secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. USCC Rule 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the nonmovant's case. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences run. *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

This case turns on two closely related issues. The first issue is whether 10 U.S.C. § 8258 (1982) grants any Air Force Reserve officer, who has at any point in his life served as an enlisted man, a statutory right to reenlist. The second issue is whether the AFBCMR decision to deny the plaintiff relief was arbitrary and capricious. The first issue can be resolved on summary judgment because it is a question of law. The second issue can also be resolved on summary judgment because the facts leading up to the AFBCMR decision are not in dispute. As such, this Court may determine both issues on the cross-motions before the Court.

The statute at issue in this case is 10 U.S.C. § 8258 (1982). The relevant language of section 8258 provides that:

Any former enlisted member of the Regular Air Force who has served on active duty as a reserve officer of the Air Force, or who was discharged as an enlisted member to accept a temporary appointment as an officer of the Air Force, is entitled to be reenlisted in the Regular Air Force in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in the line of duty, if (1) his service as an officer is terminated by an honorable discharge or he is relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge, and (2) he applies for reenlistment within six months (or such other period as the Secretary of the Air Force prescribes for exceptional circumstances) after termination of that service. However, if his service as an officer terminated by a general discharge, he may, under regulations to be prescribed by the Secretary of the Air Force, be so reenlisted.

10 U.S.C. § 8258 (1982).

While the plaintiff reads this statute to entitle any officer a right to reenlist, if at one point in his life he served as an enlisted man, the Government contends that the term "former enlisted members," includes only those enlisted men discharged from active duty *immediately* before their entry into active duty as commissioned officers. The crux of the plaintiff's argument is that there is no "immediacy" requirement, and that the term "former enlisted member," as used in section 8258 applies to any officer who has at any time in his life served as an enlisted man. Plaintiff further argues that because the language of the statute is "clear," the Court should not rely on the legislative history of the statute to depart from the "unambiguous statutory text." Plaintiff's Reply, at 2 (Apr. 15, 1993).

The plaintiff is correct that a court should not resort to the legislative history of a statute when the text of the statute is clear and unambiguous. Indeed, if a statute is clear and unambiguous on its face, "that is the end of the matter, for the

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Sullivan v. Stroop*, 496 U.S. 478, 480, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990) (quoting *K–Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)); *see, e.g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Darsigny v. Office of Personnel Management*, 787 F.2d 1555, 1557 (Fed.Cir.1986). However, when a statute can be read in more than one way, or when a statute is ambiguous on its face, courts will resort to the legislative history to provide a meaning consistent with what Congress intended. *Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) ("courts appropriately may refer to a statute's legislative history to resolve statutory ambiguity"); *Toibb v. Radloff*, —— U.S. ——, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) ("we first look to the statutory language and then to the legislative history if the statutory language is unclear"); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Contrary to the plaintiff's contention that 10 U.S.C. § 8258 is clear and unambiguous, the Court holds that *Frazier v. Callaway*, 504 F.2d 960 (5th Cir.1974), is instructive on the issue of the statute's ambiguity. In that case, the court interpreted 10 U.S.C. § 3258 (1982), which is worded identically to the statute at issue in the case at bar—except, of course, 10 U.S.C. § 3258 makes reference to the Army and not the Air Force.[3] In *Frazier*, the court held that a "potential" ambiguity exists in the statute because the statute refers to an entitlement to "be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer * * *." *Frazier*, 504 F.2d at 961. The court held that an ambiguity exists because if an enlisted person progressed through the ranks

(*i.e.*, up to E–4, as plaintiff had), the statute is ambiguous as to whether a person, who is entitled to reenlistment under the statute, would be reenlisted as an E–4 (the grade he held *immediately* before becoming an officer), or whether he would be reenlisted at the grade he initially held as an enlisted man. The *Frazier* court held that this "potential" ambiguity was grounds to look to the legislative history for assistance.

Upon analyzing the legislative history of the 1918, 1939 and 1954 versions of 10 U.S.C. § 3258, the *Frazier* court found that:

the proper construction of Section 3258 implies an immediacy requirement and that an Army Reserve officer attempting to reenlist at the termination of his active duty as a commissioned officer must have been commissioned immediately after the termination of his prior service as an enlisted man in order to qualify for reenlistment at prior grade under 10 U.S.C. § 3258.

*Frazier*, 504 F.2d at 964. As noted above, because 10 U.S.C. § 3258 and the statute in this case are "sister statutes" with identical legislative history, both statutes necessarily contain an immediacy requirement.

█ Plaintiff, however, argues that the *Frazier* case was wrongly decided, and that a "potential" ambiguity did not justify resort to the legislative history. Regardless of the propriety of the *Frazier* court's inquiry into the legislative history, the "potential" ambiguity found in *Frazier* is very real in the case at bar, and therefore justifies the Court's turning to the statute's legislative history. It is curious to note that the plaintiff in this case seeks backpay and correction of his military records to reflect a grade of E–4, the grade he had achieved *immediately* prior to his discharge in 1969. Apparently the plaintiff

---

3. Defendant is correct in pointing out that the Air Force was designated as an agency separate from the Army in 1947, pursuant to the National Security Act of 1947, Pub.L. No. 253, § 207(g), 61 Stat. 495, 502–03 (1947). A large portion of the statutes governing the Army in 1947 were subsequently duplicated and adopted by the Air Force—10 U.S.C. § 8258 being one of those statutes adopted almost word-for-word. As such, the legislative history discussed at length by Judge Minor Wisdom in *Frazier v. Callaway*, although dealing with the Army "sister" statute, is equally applicable to the case at bar.

reads an immediacy requirement into one portion of the statute, and not the other. Plaintiff reads 10 U.S.C. § 8258 to entitle him to "be reenlisted in the Regular Air Force in the enlisted grade that he held [*immediately*] before his service as an officer * * *." Of course, the bracketed word "immediately" does not exist in the statute. For this reason, reliance on the legislative history is particularly appropriate to clarify an ambiguity with respect to the immediacy requirement. As the court held in *Frazier*, "[a]lthough this phrase would not by itself prove the existence of an immediacy requirement under the statute, it is significant both for its compatibility with the immediacy requirement shown in the legislative history and for its incompatibility with the construction advanced by the court below." *Frazier*, 504 F.2d at 964. Therefore, this Court holds that a proper reading of section 8258 imposes an immediacy requirement and that an Air Force Reserve officer must have been commissioned immediately after the termination of his service as an enlisted man. *See Frazier v. Callaway*, 504 F.2d 960 (5th Cir.1974); *Ritter v. United States*, 401 F.Supp. 417 (D.Mass.1975).

In addition to the ambiguity found in *Frazier*, this Court notes another ambiguity in the first word of the statute—"any." Plaintiff argues that the word "any" should be accorded substantial weight and taken to support his argument that Congress intended "any" former enlisted man who had later served as an officer to have an entitlement to reenlist. Plaintiff's reading of 10 U.S.C. § 8258 is difficult to reconcile with the overall structure and purpose of that section.[4] In 1918, when the statute at issue was originally promulgated, Congress had no intention of granting an enti-

tlement to any commissioned officer to reenlist if he had at any time served on .active duty as an enlisted man. The statute was promulgated to protect (i) enlisted men who became officers immediately after the termination of their prior enlisted service, or (ii) enlisted men who took temporary commissions. According to the original statute's legislative history:

> This legislation affords protection to enlisted men and warrant officers *called to duty* under Reserve commissions as well as other enlisted men and warrant officers *who may be discharged to accept* commissions in the Army of the United States in time of an emergency, and the committee is of the opinion that such protection should be accorded these men since there are approximately 385 warrant officers and 3,000 enlisted men now holding Reserve Commissions.

76th Cong., 1st Sess., S.Rep. No. 397 (emphasis added). It is clear from the excerpt above that Congress intended to protect two types of enlisted men: those "enlisted men called to duty under Reserve commissions," and "those enlisted men and warrant officers that may be discharged to accept commissions" in the time of emergency. Congress would not have used the words "enlisted men and warrant officers called up," if the persons being "called up" were not enlisted men or warrant officers *at that time*. In other words, the first type of enlisted man protected by the statute must have been made an officer *immediately* after serving as an enlisted man. Secondly, the statute protects "other enlisted men and warrant officers who may be discharged to accept commissions" in times of emergency. Clearly, an immediacy requirement exists for this category of person because the enlisted man must be "dis-

---

**4.** In *Frazier v. Callaway*, 504 F.2d 960, 962–63 (1974), the court noted that 10 U.S.C. § 3258 (the predecessor to the statute at issue in this case) was enacted in March of 1918 for the purpose of encouraging noncommissioned officers in the Regular Army to accept temporary assignments as Reserve officers during World War I. Congress apparently felt that some well-qualified enlisted men would hesitate to take temporary commissions as Reserve officers unless they had some sort of guarantee that they

could return to enlisted duty if they were no longer needed as commissioned officers. The Senate Report on this statute noted that "it has taken some of these noncommissioned officers many years of service to attain the positions they now hold, and they naturally do not care to give up such positions for temporary commissions, and then start at the bottom and try to regain their former status." 65th Cong., 2d Sess., S.Rep. No. 320, p. 1.

charged to accept a commission." The Senate never considered personnel in Mr. Zavislak's position, and it is clear that the statute was not meant to protect persons who did not obtain a commission immediately after being discharged as an enlisted man. It is equally clear that the term "any," as used in this statute is not intended as the plaintiff argues to negate the immediacy requirement, rather it is intended to make the reenlistment entitlement mandatory on the Air Force and not discretionary. The word "any" in this statute *requires* the Air Force to reenlist *"any"* officer who meets the criteria set forth in that statute.

The plaintiff also places heavy and undue emphasis on the word "former" in the statute, as the word is used to describe enlisted men protected by the statutory entitlement to reenlist. Plaintiff argues that the word "former" is clear enough, and that since plaintiff is indeed a "former" enlisted man, he is entitled to protection under the statute. This argument is untenable at best in light of the Historical and Revision Notes found directly under the text of the statute. According to these notes, the word "former" was inserted to clarify that a person could not serve as an enlisted man and as an officer at the same time. 10 U.S.C. § 8258 (1982) (Historical and Revision Notes). Congress did not intend to change or expand the protections afforded in Section 8258 by adding the word "formerly," as plaintiff argues, it was merely intended to clarify.

 The plaintiff argues alternatively that even if 10 U.S.C. § 8258 is read to have an immediacy requirement, this Court should overturn the AFBCMR finding that the plaintiff is not entitled to the relief he sought. Having sought relief from the AFBCMR, the plaintiff is bound by its conclusion unless he can prove that the decision was arbitrary, capricious, contrary to the law, or unsupported by the evidence. *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979) (*en banc*).

 In light of this Court's holding that 10 U.S.C. § 8258 contains an immediacy requirement, it is axiomatic that the AFBCMR decision was not contrary to that statute as plaintiff contends. Although the plaintiff is correct that the AFBCMR is charged with preventing fundamental unfairness and injustice, this Court will not overturn or second guess the Board's ruling unless the plaintiff meets the rather onerous burden placed upon him by the standard set forth in *Sanders*. A decision by an administrative agency is considered arbitrary and capricious only if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). The agency must, however, articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962). In reviewing an agency determination under the "arbitrary and capricious" standard, the Court looks to whether the decision was based on a consideration of relevant factors, whether there has been a clear error of judgment and whether there is a rational basis for the agency's conclusions. *Mobil Oil Corp. v. Department of Energy*, 610 F.2d 796, 801 (Temp.Emer.Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Where the agency is entitled to exercise its discretion, as is the case with the AFBCMR, great deference is to be given to its decisions, and the plaintiff has an unusually heavy burden of proof in showing that the determination was arbitrary and capricious. *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1164 (Fed. Cir.1985).

After the plaintiff's hearing before the AFBCMR, the Board concluded that the plaintiff was not entitled to reenlist either under 10 U.S.C. § 8258, or under the new

Air Force policy. Although the plaintiff addressed the issue of the recent change in the Air Force policy to the Board's attention, the Board was not compelled to find the new policy unjust or unfair as applied to the plaintiff. The plaintiff does not dispute that the Air Force may restrict the number of enlistments by changing its policies, rather the plaintiff argues that it was fundamentally unfair for him to lose his ability to reenlist without adequate notification. The AFBCMR found that adequate notice of the new policy was "disseminated by several means throughout 1986" and also in the form of a newspaper article with wording almost identical to that found in 10 U.S.C. § 8258. *Record of Proceedings*, Air Force Board for Correction of Military Records, at 5 (Oct. 29, 1992). Moreover, even if the Air Force gave personal notice of the policy change to each and every officer, the plaintiff still would have been in the same unfortunate position. The plaintiff was not aware that he would be passed over a second time for promotion, and he apparently presented no evidence to the Board establishing that he would have sacrificed a second chance for promotion for the opportunity to reenlist. The Air Force policy changed prior to the meeting of plaintiff's second promotion board, and it is in fact true that "[t]he applicant lost retirement benefits based on his nonselection for promotion to the grade of major, not because he was denied reenlistment." *Record of Proceedings*, Air Force Board for Correction of Military Records, at 5 (Oct. 29, 1992). The plaintiff further argues that the AFBCMR cannot justify its failure to grant relief on the grounds that it treated other similarly situated persons in a similar manner. The plaintiff argues that "that's like the victim of a warrantless search by the Po–Dunk Police Department being told that he has no basis to complain because the Po–Dunk Police Department always searches people without warrants." *Plaintiff's Reply*, at 11 (Apr. 15, 1993). This argument is flawed for two reasons. First, the argument presupposes that the underlying action is illegal or contrary to law. In the case at bar, the plaintiff was not entitled to reenlist under 10 U.S.C. § 8258

or under the new Air Force Policy. Since the new Air Force policy is in accordance with the statute, the AFBCMR's rejection of the plaintiff's claim was not contrary to the law. Plaintiff's argument fails to recognize that many of the greatest injustices occur when people are not treated equally. The Board's finding that other similarly situated individuals were treated similarly recognizes the Board's mandate to cure injustice, and in the plaintiff's case they found none. The argument advanced by the plaintiff gives the Board a "Hobson's choice"—that is, treat everyone the same and be accused of perpetuating an injustice (as the plaintiff has argued), or treat people differently and be accused of perpetuating an injustice. *See, e.g., Reale v. United States*, 208 Ct.Cl. 1010, 1011, 529 F.2d 533, 534, *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976) (holding that the AFBCMR mandate requires it to correct error and injustice). This Court holds that the choice made by the AFBCMR in denying the plaintiff recovery under its authority to correct error or injustice was rationally based on the facts before the Board, and that the Board considered all relevant factors when it made its decision.

The Board also considered the fact that the plaintiff was given $30,000 in separation pay upon his involuntary separation and held that the plaintiff was treated fairly under the circumstances. Although the plaintiff would have no doubt liked the full retirement benefits he requested, the plaintiff has failed to meet his burden of proof by establishing that the Board's determination was not rationally based on the facts before it. This Court finds that the AFBCMR decision was rationally based on the undisputed facts before the Board, and rejects the plaintiff's argument that the decision was arbitrary and capricious, and not in accordance with the law.

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss is allowed, the plaintiff's Cross–Motion for Summary Judgment is denied, and the Complaint is to

be dismissed. The clerk is directed to enter judgment accordingly. No costs.