**David S. KORETSKY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–688C.**

United States Court of Federal Claims.

July 7, 2003.

---

William Saad Aramony, of Alexandria, VA, for Plaintiff.

Jonathan Reid Prouty, Attorney, with whom were James M. Kinsella, Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assistant Attorney General, Civil Division, Department of Justice, Washington D.C., for Defendant. Major Steven J. Ehlenbeck, Air Force General Litigation Division, of Arlington, VA, of counsel.

### *OPINION*

SMITH, Senior Judge.

Plaintiff David Koretsky, a former Air Force Reserve Captain, filed this suit seeking: 1) reenlistment into the Regular Air Force at the grade of Staff Sergeant, which he held as an enlisted person prior to his commission; 2) pay and allowances at that grade less offsets; 3) correction of his Air Force records; and 4) attorneys' fees and costs.

Defendant has filed a Motion to Dismiss pursuant to Rules of the U.S. Court of Federal Claims ("RCFC") 12(b)(4) (failure to state a claim upon which relief can be granted), or alternatively, for Judgment upon the Administrative Record pursuant to RCFC 56.1. Plaintiff has filed a Cross–Motion under RCFC 56.1 and also moved for summary judgment under RCFC 56(a). Oral argument has been held on these motions.

This is a hard case and the court is sympathetic with Mr. Koretsky. However, after much reflection the court finds it must grant the Defendant's motion and dismiss the claim. While Plaintiff was unlucky enough to attempt to exercise his previous reenlistment rights after the Congress by statute eliminated those particular rights, he does not have an estoppel or contract claim. *See Office of*

*Personnel Management v. Richmond,* 496 U.S. 414, 419–20, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). While a monetary right might well be protected under the concept we call vested, this does not apply here.

There is a significant difference between a right to enlist in the military and the right to receive compensation or bonuses from the military. Membership in the military imposes significant obligations on both the enlisted member and the military itself. An individual who enlists and who does not fit the military's needs can cause damage to an institution that depends on cohesiveness and teamwork for its effectiveness. The courts must give great deference and have great sensitivity for the military's need to control its own personnel acceptance policies within the ambit of statutory and regulatory provisions. As noted earlier, these have little in common with the body of contract law with the government. Only when the issue is purely monetary do the legal doctrines resemble each other. Pensions and salary are the private property of the soldiers who receive them. Ranks and positions in the military are not. They serve the military and cannot be sold or traded as can a salary or what it purchases. For these reasons and those discussed herein, the Court hereby GRANTS the Defendant's Motion to Dismiss.

### *FACTS*

The record before this court reveals no material disputes of fact, although, some factual allegations can be fairly described as legal conclusions. In 1979, shortly after receiving his B.S. in Mechanical Engineering, Mr. Koretsky filed an "Application for Training Leading to a Commission in the U.S. Air Force." He then enlisted in the Regular Air Force for a period of four (4) years and was assigned to the School of Military Sciences of Officer Training School ("OTS"). While at OTS, he was promoted to Staff Sergeant. He was enlisted in the Regular Air Force from October 31, 1979, to March 9, 1980, when he was honorably discharged to accept an officer's commission. He was immediately commissioned a Second Lieutenant in the

Air Force Reserve ("AFR") and began active duty service. Subsequently, Mr. Koretsky was promoted to Captain and also received a Master's Degree from the Air Force Institute of Technology.

Mr. Koretsky was passed over for a promotion to Major, but decided to stay on active duty instead of taking the voluntary separation bonus. Subsequently, he was passed over a second time. As a result of the two promotion pass-overs, Mr. Koretsky was involuntarily separated from active duty by a Reduction–in–Force Board ("RIF") on August 27, 1992, as required by statute. The Air Force advised him by letter that he could either collect a smaller separation bonus for involuntary separation or rejoin the Regular Air Force in an enlisted status if otherwise entitled to reenlistment.

In September 1992, Mr. Koretsky requested and obtained authorization from the Air Force to reenlist in the Regular Air Force at his last enlisted rank of Staff Sergeant under 10 U.S.C. § 8258.[1] Based on that letter Mr. Koretsky chose December 31, 1992, as his date of release from active duty ("RAD") separation with immediate subsequent reenlistment.

Unbeknown to Mr. Koretsky, Congress was considering repeal of the statutory reenlistment entitlement for former officers whose enlisted service consisted solely of OTS. The repeal provision was included in the FY93 National Defense Authorization Act ("NDAA"). The provision was reported by the Senate in July 1992, prior to Mr. Koretsky's RIF Board, and both chambers passed it in conference on October 5, 1992. On October 8, the Air Force Judge Advocate General ("JAG") issued an advisory opinion predicting speedy signing by the President and indicating that another officer in Mr. Koretsky's situation would not be able to reenlist after the enactment. The President signed the bill on October 23, 1992, and it became applicable to persons discharged or released from active duty as commissioned officers in the Air Force Reserve on that date.

---

1. The statute was in effect at the time of Mr.    Koretsky's enlistment.

On December 29, two days before Mr. Koretsky's RAD, the Air Force advised him that his authorization letter was invalid, but that he could reenlist under the Prior Service Program ("PSP") as an exception to policy if recommended by his unit commander. On January 29, 1993, Plaintiff's commander Colonel Holm declined to recommend him for reenlistment based on several performance reports with substandard ratings in some areas. It is undisputed, however, that there were also positive ratings in the reports and from people with personal knowledge of Mr. Koretsky's performance. Mr. Koretsky also submitted to the court several favorable recommendations and reports. However, these materials are not relevant to this case because they were obtained during his service with the Air Force or various Air National Guards after his involuntary separation.

Mr. Koretsky appealed the commander's decision to Air Force personnel headquarters on January 29, 1993. Headquarters reviewed his nonselection for enlistment and determined that Colonel Holm's recommendation not to offer a position in the Regular Air Force complied with regulations and was supported by the evidence. Plaintiff's appeal was formally denied on April 6, 1993.

On January 25, 1994, Plaintiff filed an application with the Air Force Board for Correction of Military Records ("Board"). He contested both the denial of reenlistment under the terms of original authorization and, alternatively, his commander's failure to recommend him for the PSP. After obtaining two advisory opinions, the Board denied Plaintiff's application on June 28, 1994. On May 16, 1997, Mr. Koretsky requested a *de novo* review of his application and filed a supplement to that request on August 25, 1997. After receiving an advisory opinion from the Staff Judge Advocate at the Air Force Personnel Center, Plaintiff submitted a written response on April 14, 1998. On August 14, 1998, the Board again denied Mr. Koretsky's application. In that denial, the Board found "no evidence that applicant was treated any differently than other individuals similarly situated." Admin. R. at 65–68. After receiving another supplement from the

Plaintiff, the Board on October 20, 1998, again affirmed that Mr. Koretsky was not the victim of error or injustice. Plaintiff then filed his initial complaint with this court on August 27, 1998.

## DISCUSSION

In his First Amended Complaint, Plaintiff alleged that the Air Force's failure to advise him that it would preclude his reenlistment under the DOD legislation violated his procedural rights under the Fifth Amendment Due Process Clause. He also alleged that such failure to advise was contrary to 10 U.S.C. § 278,[2] which provided that the Secretary of Defense "shall require the complete and current dissemination to all Reserves and to the public of information of interest to reserve components." Additionally, Mr. Koretsky contended that his commander's decision against recommending him for the PSP was based on insufficient or erroneous evidence. The alleged evidentiary errors were the commander's lack of personal knowledge of Mr. Koretsky's performance and his failure to consider favorable findings in some of the reports. Finally, Plaintiff asserted that the Board's denial of relief on either the original authorization or the commander's decision was arbitrary, capricious, and contrary to the statutory mandate of 10 U.S.C. § 1552 to correct "injustice", or abuse of discretion.

The government disagrees. First, Defendant claims neither procedural due process nor Section 278 imposed on the Air Force a legal duty to advise Plaintiff of pending legislation. Thus, the government argues that legislative history and case law interpret Section 278 to require dissemination of information on obligations, not rights, of Reserve members. *See Foster v. United States*, 733 F.2d 88 (Fed.Cir.1984). The government also maintains that Mr. Koretsky did not have a property right in his reenlistment because there is no general right, constitutional or otherwise, to enlist in the military, see *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), *Maier v. Orr*, 754 F.2d 973 (Fed.Cir.1985), and because Section 8258 was amended prior to Plaintiff's

---

**2.** 10 U.S.C. § 278 was subsequently repealed ef-  fective December 1, 1994.

reenlistment with the Regular Air Force. The government further asserts that Section 8258 was not a part of a contract between the Air Force and Mr. Koretsky because he did not substantially rely on the statute to give up his enlistment and, in any event, the statute was aimed primarily at protecting those enlisted men who accepted battlefield commissions. Since in 1992, Congress deemed service in the OTS insufficient to earn the reenlistment right, the government argues that Mr. Koretsky does not have a valid interest in reenlistment.

The government also argues that the commander's failure to recommend Mr. Koretsky's reenlistment is non-justiciable because no judicially cognizable standards exist for one's fitness as a non-commissioned officer ("NCO"). Finally, the government maintains that the commander's and the Board's decisions were justified. Defendant pointed to negative performance evaluations that warranted Mr. Koretsky's rejection for an NCO position by the commander and the Board. Further, the Board's remedial authority was allegedly circumscribed by explicit congressional withdrawal of reenlistment rights from officers like Mr. Koretsky.

Plaintiff responds by arguing that he was deprived of valid reenlistment rights which vested either at the time of his enlistment or, at the latest, upon the issuance of the authorization letter. Plaintiff also argues that his choice of a post-enactment reenlistment date was involuntary, and thus a correctable injustice within the meaning of the Correction Board's organic statute. Finally, Mr. Koretsky maintains that Air Force officials committed numerous errors in deciding to deny his reenlistment through the PSP, including failure to consider relevant evidence, improper weighting of the evidence, failure to base decisions on personal knowledge, and failure to grant personal appearance rights on appeal.

## I. JURISDICTION

The United States is immune from suit unless Congress specifically waives the government's sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Soriano v. Unit-*

ed States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). The Tucker Act grants the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded ... upon ... any Act of Congress." 28 U.S.C. § 1491 (1988). Because the Plaintiff is seeking monetary relief, this court has jurisdiction over this dispute under the Tucker Act. This court, however, does not have jurisdiction over these claims based upon voluntary military retirements. Nonetheless, we do have jurisdiction to review retirements that are involuntary. *See Bergman v. United States*, 28 Fed.Cl. 580, 584 (1993) (citing *Sammt v. United States*, 780 F.2d 31, 33 (Fed.Cir.1985)).

## II. STANDARD OF REVIEW

The Court of Federal Claims extends great deference to decisions of the Boards for Correction of Military Records. "Where the agency is entitled to exercise its discretion, as is the case with AFBCMR, great deference is to be given to its decisions, and the plaintiff has an unusually heavy burden of proof in showing that the determination was arbitrary and capricious." *Zavislak v. United States*, 29 Fed.Cl. 525, 531 (1993) (citing *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1164 (Fed.Cir.1985)). While the court cannot review actual promotion decisions, the court can decide if the Board followed the procedures required by the governing statutes and regulations. *See Strickland v. United States*, 36 Fed.Cl. 651 (1996); *see also Murphy v. United States*, 993 F.2d 871 (Fed. Cir.1993).

## III. LEGAL ISSUES

**1. Failure to advise of denial of enlistment upon effective date of legislation.**

The Plaintiff alleges that Defendant's failure to advise him of the pending amendment to Section 8258 violated Section 278's requirement to disseminate information to reservists and violated his constitutional due process rights.

### a) Section 278

■ Section 278 of Title 10 of the United States Code provided that the Secretary of Defense "shall require the complete and current dissemination to all Reserves and to the public of information of interest to reserve components." Based on conclusive language in the legislative history, the Federal Circuit interpreted this statute to mandate the release of information pertaining only to reservists' obligations. *See Foster v. United States,* 733 F.2d 88 (Fed.Cir.1984). In *Foster,* the Federal Circuit refused to find such a mandate regarding the reservists' rights or, implicitly, deficiencies in personnel administration that trigger those rights. That is exactly what the Plaintiff is urging this court to do. We cannot find a violation because the information—that a portion of Section 8258 might be repealed, effecting reservists' ability to reenlist—did not involve reservists' obligations or duties. Instead, the proposed amendment directly addressed Mr. Koretsky's reenlistment rights. Further, it would impose an unreasonable burden, and perhaps an unuseful action, on the Air Force to advise service personnel of every pending legislative change. Therefore, the Defendant's actions did not violate Section 278.

### b) The Board's Decision

Involuntary retirements and resignations are routine subjects of correction claims before various government personnel boards, see, e.g. *Scharf v. Dep't Of Air Force,* 710 F.2d 1572 (Fed.Cir.1983), and within the purview of the Board. Case law dealing with claims of unfair retirements and resignations is persuasive because one makes the same choices regarding release from active duty and reenlistment as one would with respect to resignation or retirement.

The determination of whether there was a voluntary resignation requires the court to look at the facts and circumstances and "in general, resignations are presumed voluntary." *See Bergman v. United States,* 28 Fed.Cl. 580, 585 (1993). However, that presumption can be rebutted in a number of cases including when the employee detrimentally relied on misinformation from the agency. *See id.* To demonstrate duress, the claimant must show: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposing party." *Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584 (1975) (citing *Fruhauf Southwest Garment Co. v. United States,* 126 Ct.Cl. 51, 62, 111 F.Supp. 945 (1953)). The court applies this as an objective test. *Bergman,* 28 Fed.Cl. at 586. In this case, Mr. Koretsky was presented with two options upon his involuntary separation in August of 1992:(1) collect a separation bonus for involuntary separation; or (2) rejoin the Regular Air Force in an enlisted status if otherwise entitled to reenlistment. Mr. Koretsky chose to reenlist under Section 8258 and selected December 31, 1992, as his RAD separation and subsequent reenlistment date. Thus, it appears to the court that given the choice Mr. Koretsky was presented upon his separation that he has failed to demonstrate any sort of duress to rebut the general presumption that resignations are voluntary. "Choice" and "voluntary" do not guarantee a good set of options. When a service member is given the choice of resignation or court-martial it is a hard, and perhaps, unappealing choice. But the Federal Circuit has clearly held it voluntary. *See Sammt v. United States,* 780 F.2d 31, 32 (Fed.Cir.1985); *Brown v. United States,* 30 Fed.Cl. 227, 229–30 (1993), *aff'd,* 26 F.3d 139 (Fed.Cir.1994) (finding former Army reservist's resignation "for the good of the service" pending a court-martial was voluntary and lacked duress caused by government action). Further, in light of the court's finding that the Air Force did not violate Section 278, there was nothing additional for the Board to consider. The Board acted within its discretion by denying this portion of Mr. Koretsky's claim.

### 2. Right to reenlist.

■ Plaintiff had no contractual right to reenlist that was protected by the Fifth Amendment's Due Process Clause. It is a "premise[ ] of law [that] ... no one has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation." *Dodson v. Dep't of Army,* 988 F.2d

1199, 1203–04 (Fed.Cir.1993). Plaintiff never received or signed a reenlistment contract with the Air Force which would bind the Air Force to reenlist him. Instead, he merely had a letter that authorized his reenlistment. While that letter authorized him to reenlist as long as he was honorably discharged, it did not form a reenlistment contract.

The court has stated that enlistment (and re-enlistment) contracts consist of the agreement the enlistee signs and "all statutes and [ ] regulations in force at the time" of his enlistment. *Grulke v. United States*, 228 Ct. Cl. 720, 723, 1981 WL 21465 (1981) (quoting *Jackson v. United States*, 216 Ct.Cl. 25, 573 F.2d 1189 (1978)); *see also Beauchamp v. United States*, 6 Cl.Ct. 400, 404 (1984). The enlistment agreement is a detailed document that the enlistee and the military recruiter complete together. It includes information such as the desired assignment and the training the enlistee will receive. The letter Mr. Koretsky received from the Air Force contained no such information. Instead, it simply authorized the Plaintiff to reenlist. Had the Plaintiff chosen to reenlist immediately, the letter would have served as his authority to do so. However, by setting his reenlistment date for December 31, 1992, the Plaintiff accepted the gamble that the underlying law would change. Unfortunately for Mr. Koretsky, that is exactly what happened in this case.

The Supreme Court in *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), addressed regulatory and Congressional actions that affected bonuses for certain service members. First, the Court held that the benefits rights of service members are fixed at the time of the original contract and that the service branches cannot terminate that entitlement later. *Larionoff*, 431 U.S. at 877, 97 S.Ct. 2150. Second, the Court considered whether benefits entitlements can be terminated by Congress once a service member already earned them and was approved to receive them. *Id.* at 878–79, 97 S.Ct. 2150. The Court indicated that Congress lacked the power to withdraw the vested rights. *Id.* at 881–82, 97 S.Ct. 2150. In this case, Mr. Koretsky is not seeking the reinstatement of an earned bonus or benefit.

Instead, he claims that the authorization letter he received in September of 1992, entitles him to reenlist under Section 8258. As discussed previously, the court is sympathetic to Mr. Koretsky's situation, but must recognize the substantial distinction between vested property rights, and the right to reenlist in the military. As *Mair* makes clear "[n]o one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those being within the purview of the Congress and the military." 754 F.2d at 980. Here, Congress passed, and the President signed into a law, a bill that changed the composition of the military. The new law adversely affected the statutory reenlistment possibilities for former officers, like Mr. Koretsky, whose enlisted service consisted solely of OTS. Unlike the bonuses at issue in *Larionoff*, the President's action terminated Mr. Koretsky's reenlistment entitlement.

Lastly, the court is aided in its decision by Judge Yock's thoughtful opinion in *Zavislak v. United States*, 29 Fed.Cl. 525 (1993). In *Zavislak*, this court upheld the Air Force's decision not to reenlist the plaintiff under Section 8258. In Judge Yock's review of Section 8258's legislative history he found that:

> In 1918, when the statute at issue was originally promulgated, Congress had no intention of granting an entitlement to any commissioned officer to reenlist if he had at any time served on active duty as an enlisted man. The statute was promulgated to protect (i) enlisted men who became officers immediately after the termination of their prior enlisted service, or (ii) enlisted men who took temporary commissions.

*Zavislak*, 29 Fed.Cl. at 530.

Here, it is unclear if Section 8258 would even apply to Mr. Koretsky as he enlisted in the Regular Air Force only to become an officer under the OTS program. He was enlisted in the Regular Air Force for a little over five (5) months before receiving his officer's commission. Further, Mr. Koretsky was not honorably discharged to accept a commission during a time of emergency. *See* 76th Cong., 1st Sess., S.Rep. No. 397. Thus, while the outcome of this question is not

determinative to the court's holding, it enhances the reasonableness of the Board's decision. It also carries weight when considering the Board's analysis of the equities of this case.

### 3. Commander's decision not to recommend and affirmance by Board.

■ For a court to review military personnel decisions, there must be justiciable standards for determining who is fit to serve and whether the military owed a duty to those who serve. *See Murphy v. United States,* 993 F.2d 871 (Fed.Cir.1993), *cert denied,* 511 U.S. 1118, 114 S.Ct. 2123, 128 L.Ed.2d 681 (1994). As our Circuit recognized, "[T]he military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Id.* at 872 (quoting *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)). The court's role is to determine whether the statutory and regulatory procedures were followed by the military in the cases before it. In this case, Plaintiff fails to identify any regulatory or statutory standards, and, therefore, this allegation fails the most favorable evidentiary burden.

■ Once a plaintiff has sought relief from the Air Force Board for Correction of Military Records ("Board"), he is bound by that Board's determination "unless he can prove that the decision was arbitrary, capricious, contrary to law, or unsupported by the evidence." *Zavislak v. United States,* 29 Fed. Cl. 525 (1993) (citing *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979) (en banc)). For a Board to act in an arbitrary and capricious manner, it must have "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for the decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Plaintiff has not shown on the administrative record that the Board acted in such a manner.

Indeed, the Board reviewed Plaintiff's separation not once—but three times. Each time his record was reviewed, the Board concluded that Mr. Koretsky's commanding officer thoroughly reviewed his record before refusing to recommend him for the PSP. Moreover, Plaintiff failed to disclose any source whatsoever for the alleged legal obligation of military unit commanders to disregard written performance reports in favor of in-person fact-finding. The problem areas, such as leadership, indicated in Mr. Koretsky's report are rationally related to his competence both as a commissioned and a non-commissioned officer. Thus, the Court can not overturn the Board's action upholding Colonel Holm's decision not to recommend reenlistment for Mr. Koretsky.

### *CONCLUSION*

The Court hereby GRANTS the Defendant's Motion to Dismiss and request for Judgment upon the Administrative Record pursuant to RCFC 56.1, and DENIES Plaintiff's Cross–Motion for Judgment upon the Administrative Record pursuant to RCFC 56.1. Each party shall bear their own costs. The Clerk of the Court is directed to enter judgment in accordance with this opinion and dismiss this case.

The Court also CANCELS the Telephonic Status Conference scheduled for July 10, 2003, at 4 p.m. EDT.

**It is so ORDERED.**